**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**JONATHAN STANLEY,** *et al*.,

      **Plaintiffs,**

                                **Case No. 2:16-cv-386**
                                **Judge James L. Graham**
      **v.**                       **Magistrate Judge Elizabeth P. Deavers**

**TURNER OIL & GAS
PROPERTIES, INC.,**

      **Defendant.**

## REPORT AND RECOMMENDATION

This matter was referred to the Undersigned, pursuant to 28 U.S.C. § 636(b), to conduct a fairness hearing and to issue a report and recommendation. (ECF No. 47 at 4.) In connection with the fairness hearing, the parties have filed a Joint Motion for Approval of Class Action Settlement (ECF No. 127) ("Joint Motion for Approval") and Plaintiffs' counsel has filed a motion for attorney's fees and reimbursement of costs as well as supplements to that request. (ECF Nos. 121, 123, 125, 131.) For the reasons that follow, it is **RECOMMENDED** that these motions be **GRANTED only on the condition** that counsel submits additional information identified in this Report and Recommendation.

## I.

This is a collective action under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. ("FLSA"), and a class action under Rule 23 of the Federal Rules of Civil Procedure, in which Plaintiffs allege Defendant Turner Oil & Gas Properties, Inc. ("Turner") failed to compensate individuals it employed in the Landman position with overtime pay in violation of the FLSA and,

for each Landman working in Ohio, the Ohio Minimum Fair Wage Standards Act

("OMFWSA"), Ohio Rev. Code Ch. § 4111.  (ECF No. 3.)  Plaintiffs maintain that Turner

misclassified each Landman as an independent contractor, rather than an employee, and required

them to work overtime without being properly paid.  (*Id*.)  Among other defenses, Turner asserts

that Plaintiffs-Landmen were property classified, treated, and paid as independent contractors.

(ECF No. 6.)

On January 13, 2017, the Court granted in part Plaintiffs' motion to conditionally certify

an opt-in class under 29 U.S.C. § 216(b), preliminarily certified this as a collective action, and

authorized notice to be sent to potential opt-in Plaintiffs.  (ECF No. 20.)  Thereafter, the parties

reached a settlement of the collective-action claims and moved the Court to approve their

settlement.  (ECF No. 41.)[1]  On October 2, 2017, the Court granted the parties' joint motion for

approval of the collective action settlement, which included the class representatives as well as

twenty-five (25) other individuals who filed opt-in notices ("the Section 216(b) class").  (ECF

No. 44.)  Pursuant to the parties' agreement, Turner would pay a settlement fund of $344,850,

with $241,895 of that total amount paid to the individual opt-in Plaintiffs and $102,955 of the

total payment paid to Plaintiffs' attorneys for fees, expenses, and costs.  (*Id*. at 2.)

The parties also moved for preliminary approval of the Rule 23 class action claim.  (ECF

No. 42.)  In response to the Court's Order (ECF No. 45), the parties submitted a revised class

notice.  (ECF No. 46.)  On March 6, 2018, the Court preliminarily approved the parties'

settlement and conditionally certified the following settlement class of 106 individuals for

settlement purposes only:  all individuals who provided contract Landman abstract title and

related services to Turner between May 20, 2014, and March 27, 2016 ("the Rule 23 settlement

---

[1] The Court previously denied the parties' request to approve a sealed settlement
agreement.  (ECF Nos. 39, 40.)

class"). (ECF No. 47 at 2–4.) The Court directed that notice be provided to the class members and referred this matter to the Undersigned to conduct a fairness hearing and to issue a report and recommendation. (*Id*. at 4.)

Consistent with Section 4 of the Joint Stipulation of Class Action Settlement and Release (ECF No. 42-1) ("the Settlement Agreement"), Turner, as the claims administrator, provided notice to the members of the Rule 23 settlement class. (Defendant's Declaration of Due Diligence, ECF No. 126, ¶¶ 2–6 ("Defendant's Declaration").). The notice period ran from March 27, 2018, through April 26, 2018. (*Id*. at ¶ 3.) No objections to the proposed settlement have been filed.

On June 5, 2018, the Undersigned conducted a fairness hearing. (ECF Nos. 128, 129.) Counsel for both parties appeared. Other than named Plaintiff Jonathan Stanley, no class members or objectors appeared personally. The parties have moved for final approval of the class action settlement. (ECF No. 127.) Plaintiff's counsel has filed a motion for attorney's fees and reimbursement of costs as well as supplements to that request. (ECF Nos. 121, 123, 125, 131.) This matter is now ripe for the Undersigned's consideration.

**II.**

**A.     Class Certification**

"To merit certification, a putative class must satisfy the four requirements of Rule 23(a)—numerosity, commonality, typicality, and adequate representation—plus fit within one of the three types of classes listed in Rule 23(b)." *Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc*., 863 F.3d 460, 466 (6th Cir. 2017). "A district court has broad discretion to decide whether to certify a class." *In re Whirlpool Corp. Front-Loading Washer Prod. Liability Litig.*, 722 F.3d 838, 850 (6th Cir. 2013).

As set forth above, the Rule 23 settlement class consists of all individuals who provided contract Landman abstract title and related services to Turner between May 20, 2014, and March 27, 2016. (ECF No. 47 at 2–4.) At the beginning of the fairness hearing, Attorney Sara Jodka, counsel for Turner, clarified that the Rule 23 settlement class contained 124 individuals, not 106 individuals, as initially represented to the Court (ECF No. 42) and as represented in Defendant's Declaration, ¶ 1. (ECF No. 129 at 3.) During the notice period, 55 individuals opted out of the settlement, and 15 individuals opted into the settlement. (*Id*. at 3–4, 9; ECF No. 123; Defendant's Declaration, ¶¶ 3–4.) The remaining class members either did not respond, attempted to respond via email only without fully executed-required paperwork, or responded outside the notice period. (Defendant's Declaration, ¶ 5.)

As to numerosity, Federal Rule of Civil Procedure 23(a)(1) requires that the class be "so numerous that joinder of all member is impracticable[.]" Fed. R. Civ. P. 23(a)(1). "There is no strict numerical test for determining impracticability of joinder." *In re Am. Med. Sys., Inc*., 75 F.3d 1069, 1079 (6th Cir. 1996). Here, while there were a high number of opt-outs (55), the Court may consider that joinder may be impracticable in an employment action due to the possibility of retaliation and economic dependency arising from the employment relationship. *See Castillo v. Morales, Inc*., 302 F.R.D. 480, 487 (S.D. Ohio 2014).[2] Under the circumstances of this particular case, the Undersigned finds that the numerosity requirement has been met.

In considering the commonality, typicality, and adequacy of representation requirements under Rule 23(a)(2)–(4), courts consider whether there are questions of fact or law common to the class, whether a named plaintiff's claim arises from the same event or course of conduct and is based on the same legal theory, and whether a named plaintiff has common interests with the

---

[2] As set forth in more detail below, no evidence of retaliation exits in this case.

4

class and will vigorously pursue the interests of the class through qualified counsel. *Young v. Nationwide Mut. Ins. Co*., 693 F.3d 532, 542 (6th Cir. 2012); *Bittinger v. Tecumseh Prods. Co*., 123 F.3d 877, 884 (6th Cir. 1997); *In re Am. Med. Sys., Inc*., 75 F.3d at 1083. Here, as set forth in the Order preliminarily certifying the class (ECF No. 47 at 2), all of the contract Landmen engaged in similar work on similar terms and entered into contracts with Turner. In particular, Jonathan Stanley and Mary Elliott, named-representative Plaintiffs (collectively, the "Representative Plaintiffs"), and the class members attended the same pre-shift meetings and had the same amount of time for their meal breaks. The Representative Plaintiffs worked as Landmen at Turner during at least part of the relevant time period and assert the same claims as may be asserted by the absent class member, namely, alleged violations of Ohio Revised Code § 4111.03. The claims are based on the same allegations that Turner misclassified the Representative Plaintiffs and class members as independent contractors instead of employees and that Turner did not pay them overtime for hours worked in excess of forty hours in a single workweek. In addition, as set forth in more detail below, most of Plaintiffs' attorneys have extensive experience in employment matters and they, like the Representative Plaintiffs, have the ability to vigorously pursue the claims of the class. Based on this record, there is no evidence of a conflict of interest between the Representative Plaintiffs and the class. For all of these reasons, the Undersigned concludes that the remaining requirements of Rule 23(a) have been met.

The Representative Plaintiffs next seek class certification under Rule 23(b)(3), which authorizes a class action if the court finds that questions of law or fact common to the class predominate and that a class action is superior to other methods of adjudication. Rule 23(b)(3) requires a showing that questions common to the class predominate. *Bridging Communities Inc. v. Top Flite Fin. Inc*., 843 F.3d 1119, 1124 (6th Cir. 2016). To satisfy this requirement, "'a

plaintiff must establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof.'" *Id*. at 1124–25 (quoting *Beattie v. CenturyTel, Inc*., 511 F.3d 554, 564 (6th Cir. 2007)).  "The predominance requirement is satisfied unless it is clear that individual issues will overwhelm the common questions and render the class action valueless." *In re Cardizem CD Antitrust Litig*., 200 F.R.D. 297, 307 (E.D. Mich. 2001) (internal quotation marks and citation omitted).  Courts consider "'the difficulties likely to be encountered in the management of a class action'" when determining whether the superiority requirement of Rule 23(b)(3) has been satisfied.  *Young v. Nationwide Mut. Ins. Co*., 693 F.3d 532, 545 (6th Cir. 2012) (quoting *Beattie*, 511 F.3d at 567)).  "'Where it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class-action device.'" *Id*. (quoting *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 339 (1980)).

Here, for the reasons discussed in connection with Rule 23(a), the Undersigned finds that the predominance prong of Rule 23(b)(3) has been met.  In addition, the Undersigned agrees with the parties that, depending on his or her length of service as a Landman for Turner, each class member may recover twenty dollars to a few thousand dollars should he or she prevail in an individual lawsuit.  Based on this record, a class action is the superior method for adjudicating these claims.  The Undersigned therefore concludes that certification of a class under Rule 23(b)(3) is proper.

Any class certified under Rule 23(b)(3) must satisfy the notice requirements under Federal Rules of Civil Procedure 23(c)(2)(B) and 23(e).  Rule 23(e) requires that "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised

6

only with the court's approval" and must be preceded by notice to class members.  Fed. R. Civ.

P. 23(e).  Under Rule 23(c)(2), notice to the class must be "the best notice that is practicable

under the circumstances, including individual notice to all members who can be identified

through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  The notice must be "'reasonably

calculated, under all circumstances, to apprise interested parties of the pendency of the action

and afford them an opportunity to present their objections.'"  *Int'l Union, United Auto.,*

*Aerospace, & Agric. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 629–30

(6th Cir. 2007) (quoting *Mullane v. Cent. Hanover Bank & Trust Co*., 339 U.S. 306, 314 (1950)).

Here, the Court rejected the parties' first proposed notice (ECF No. 43) and required that

notice be amended to include the following additional language:

> **Turner has agreed to pay up to $500,000 to compensate current and former landmen who worked in excess of 40 hours a week and didn't receive overtime pay. As a class member, if you file a claim, you engage in legally protected activity. Any act by Turner or its agents to intimidate, harass, threaten or otherwise dissuade you or another class member from filing a claim is retaliation, which is prohibited. You should notify plaintiffs' counsel immediately if you have reason to fear retaliation or believe you have experienced retaliation.**

(ECF No. 45 (emphasis in original).)  The subject notice also "explained its purpose, discussed

the nature of the pending suit and proposed class and accurately summarized the [] settlement

agreement."  *Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am.*, 497

F.3d at 630; *see also* Notice, ECF No. 46.  Stated differently, the notice "'fairly apprise[d] the

prospective members of the class of the terms of the proposed settlement' so that class members

may come to their own conclusions about whether the settlement serves their interests."  *Int'l*

*Union, United Auto., Aerospace, & Agric. Implement Workers of Am*., 497 F.3d at 630 (quoting

*Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 122 (8th Cir. 1975)).  Moreover, counsel has

explained how all class action notices were delivered via email or U.S. regular mail.

(Defendant's Declaration, ¶ 6.)  Notably, no objections have been filed.  Based on this record, the Undersigned finds that the notice was sufficient.

**B.      Fairness of the Proposed Settlement**

Pursuant to the terms of the Settlement Agreement, the parties originally created a total settlement fund of $500,000, and then proportionally reduced that amount in light of the opt-in and opt-out forms received.  (Settlement Agreement, Section 5.8; ECF No. 129 at 6–9.)  Taking into account the 55 opt-outs and 15 opt-ins and calculating a proportional reduction, the parties represent that the total amount remaining in the class settlement fund is $165,122.24.  (*Id*.; ECF No. 123.)[3]  After subtracting 30% of that total for payment attorneys fees (*see* Settlement Agreement, Section 5.8, and addressed in more detail below), counsel for both parties represented at the hearing that the total amount remaining for distribution to the Rule 23 settlement class is $115,585.57.  (ECF No. 129 at 9.)  Counsel represent in their Joint Motion for Approval that the 15 individual class members who opted-in will receive payments ranging from $104.69 to $11,733.11, at a minimum.  (ECF No. 127 at 6–7 (representing further that "[a] total list of anticipated payouts will be provided to the Court within 14 calendar days").)  During the fairness hearing, counsel also represented that this distribution amount is a 100% potential recovery for the 15 individuals who opted in to the settlement.  (*Id*. at 8–9.)  Finally, the Settlement Agreement also provides that a *cy pres* fund will be established for any unclaimed funds.  (Settlement Agreement, Sections 4.7 & 5.4.1.)

---

[3] During the fairness hearing, Plaintiffs' Attorney Edward Forman repeated the figure $165,122.67 (ECF No. 129 at 8–9), while Defendant's Attorney Sara Jodka advised that the final settlement figure was really $165,122.24 (*id*. at 9).  Regardless, as explained more fully below, the parties must provide additional information sufficient to confirm the accuracy of their calculation.

8

The parties jointly ask the Court to grant final approval to the Settlement Agreement pursuant to Rule 23(e), which governs settlements of class actions and imposes the following procedural safeguards:

> (1) The court must direct notice in a reasonable manner to all class members who would be bound by the proposal.

> (2) If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate.

> (3) The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.

> (4) If the class action was previously certified under Rule 23(b)(3), the court may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so.

> (5) Any class member may object to the proposal if it requires court approval under this subdivision (e); the objection may be withdrawn only with the court's approval.

The terms of settlement were previously submitted to the Court, which preliminarily approved those terms and certified the class. (ECF No. 47.) As described above, notice provided to the class was effected in conformity with the directions of the Court and members were provided the opportunity to object. Because the Court preliminarily certified the action as a class under Rule 23(b)(3), the parties were provided the opportunity to opt-out of the class. The Undersigned conducted a fairness hearing pursuant to Rule 23(e) on June 5, 2018, and must therefore now consider whether the Settlement Agreement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Courts consider the following factors when making this determination:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

9

*Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235, 244 (6th Cir. 2011)

(quoting *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007) (internal quotation marks

omitted)).  Courts enjoy broad discretion when assessing these factors.  *Granada Invs., Inc.*

*v. DWG Corp.*, 962 F.2d 1203, 1205–06 (6th Cir. 1992).

### 1.     Risk of fraud or collusion

At the fairness hearing, the Undersigned, concerned about the high number of opt-outs

and the low number of individuals opting-in to the settlement, questioned counsel regarding

these numbers.  Attorney John Marshall, counsel for Plaintiff, stated as follows:

> This is an opportune time for me to make a comment about -- because I think it's important to put this on the record.  This is not at all an objection to the fairness of the settlement, but I feel compelled as a representative of the class to make a statement on the record.

> I have never had a case with this number of opt-outs and so few opt-ins.  Also I've never had a case that looks like this one.  I don't know.  We have no evidence of coercion, collusion or any of that. I don't want to suggest that there is.  I'm simply saying on the record, on behalf of the plaintiff class, this is most unusual.

> On the other hand, the jobs at issue here, the nature of these jobs and the level of compensation of these jobs—as the Court might have observed in the record, some of these people were making a hundred thousand dollars a year and more—maybe lent a large number of people to want to opt out for various reasons.  I'm simply putting this on the record because it's just so odd.  It's so unusual.

(ECF No. 129 at 10.)  Attorney Marshall also observed that appropriate action could be taken in

the future if any suggestion of impropriety arises.  (*Id*. at 10–11.)

Attorney Jonathan Secrest, counsel for Defendant, agreed that there was no evidence of

collusion and represented that Boone Ellis, Turner's representative and general manager who

was present at the fairness hearing, "vetted" the matter with people under his direction.  (*Id*. at

11.)  Attorney Secrest further explained that Mr. Ellis has spent significant time developing

goodwill among the Turner workforce through cookouts, golf outings, boat trips, and that Turner employees are treated well from a compensation and family standpoint. (*Id*.) Attorney Jodka echoed the goodwill towards Turner as reflected in phone calls she received from putative class members in response to the class notice. (*Id*. at 12.) In addition, she pointed out that as to the 172 opt-in notices that were sent with the FLSA portion of this case, approximately 22 individuals opted in to the case. (*Id*.) This resulted in about a 12.8% opt-in, which is comparable to the percentage of 15 individuals out of 124 opting in to the Rule 23 portion of the case (approximately 12%). (*Id*.)

The parties also represent in their Joint Motion for Approval that the proposed settlement was reached only after a full-day mediation with an outside, experienced mediator. (ECF No. 127 at 11–12.) The Court is also mindful that the notice specifically advised members of the class that any act to intimidate, harass, threaten, or otherwise dissuade members from filing a claim is prohibited retaliation (ECF No. 46), but no objections were filed and no members appeared at the fairness hearing to object to the proposed settlement. Based on this record, the Undersigned has not found any evidence that the settlement was result of fraud or collusion and presumes that the settlement is the result of arms-length negotiations. *IUE-CWA v. Gen. Motors Corp*., 238 F.R.D. 583, 598 (E.D. Mich. 2006) ("Courts presume the absence of fraud or collusion unless there is evidence to the contrary."); *see also Brent v. Midland Funding, LLC*, No. 3:11-cv-1332, 2011 WL 3862363, *15 (N.D. Ohio Sept. 1, 2011) ("'[T]he courts respect the integrity of counsel and presume the absence of fraud and collusion in negotiating the settlement, unless evidence to the contrary is offered.'" (quoting 4 Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 11.51 (4th ed. 2002))). This factor weighs in favor of approving the Settlement Agreement.

### 2. Complexity, expense, and likely duration of the litigation

"Most class actions are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them." *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985, 1013 (S.D. Ohio 2001) (quoting *In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D. N.Y. 2000)). Here, the parties have been litigating in this Court for over two years. If the action is not settled now, additional discovery remains, including several depositions of Plaintiffs and Turner employees and costly expert witness discovery. (ECF No. 127 at 12.) The parties represent that they would also file summary judgment motions. (*Id.*) If not resolved at the dispositive motion stage, trial preparation and pre-trial motions further extend the expense and duration of the action. In light of the complexity of the facts, claims, and defenses raised in this case, the parties have incentive to appeal an adverse decision, further protracting this litigation. For these reasons, the Undersigned finds that this factor weighs in favor of approving the Settlement Agreement.

### 3. The amount of discovery engaged in by the parties

Courts must consider the amount of discovery engaged in by the parties to confirm that the plaintiffs "have had access to sufficient information to evaluate their case and to assess the adequacy of the proposed [s]ettlement[.]" *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 374 (S.D. Ohio 2006). "[T]he absence of formal discovery is not unusual or problematic, so long as the parties and the court have adequate information in order to evaluate the relative positions of the parties." *UAW v. Gen'l Motors Corp.*, No. 05-CV-73991-DT, 2006 WL 891151, at *19 (E.D. Mich. Mar. 31, 2006).

Here, the parties engaged in extensive discovery. Plaintiffs' counsel interviewed numerous current and former Landmen and several executed affidavits. (ECF No. 127 at 14.)

Turner produced hundreds of pages of records, internal company documents, and other documents.  (*Id.*; ECF No. 129 at 15–16.)  This factor therefore supports approval of the Settlement Agreement.

### 4.     The likelihood of success on the merits

"The most important of the factors to be considered in reviewing a settlement is the probability of success on the merits.  The likelihood of success, in turn, provides a gauge from which the benefits of the settlement must be measured."  *Poplar Creek Dev. Co.*, 636 F.3d at 245 (quoting *In re Gen. Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1086 (6th Cir. 1984) (internal quotation marks omitted)).  Here, Plaintiffs allege that Turner violated the FLSA and OFMWSA by failing to pay its Landmen overtime wages when they worked more than forty (40) hours in a workweek.  While the Court has not yet considered the merits of these claims, the likelihood of success on the merits is not certain.  Attorney Foreman stated at the fairness hearing that they believed Plaintiffs had a likelihood of success on the merits as Turner had sufficient control over the individuals to make them employees, not independent contractors.  (ECF No. 129 at 13.) However, Attorney Foreman further recognized that Defendant has raised several defenses and that there exists a risk in litigation.  (*Id.*)  The parties also recognize that Rule 23 actions are demanding and that there remain additional challenges with Ohio law's presumption that employment is "at will."  (ECF No. 127 at 15.)  Considering the uncertainty of success on the merits, this factor weighs in favor of approving the proposed Settlement Agreement.

### 5. The opinions of class counsel and class representatives

Most of Plaintiffs' attorneys[4] are skilled in employment and civil rights litigation. (Marshall Declaration, ECF No. 121-1, ¶¶ 2–6; Jacobs Declaration, ECF No. 121-3, ¶ 7; Forman Declaration, ECF No. 131-1, ¶¶ 2–6.[5]) The Court gives deference to their experienced opinion that the Settlement Agreement should be approved. *See Williams v. Vukovich*, 720 F.2d 909, 922–23 (6th Cir. 1983) ("The court should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs. . . . [T]he deference afforded counsel should correspond to the amount of discovery completed and the character of the evidence uncovered."); *Kritzer*, 2012 WL 1945144, at \*7 ("The Court gives weight to the belief of experienced counsel that a settlement is in the best interests of the class.").

However, the parties have not submitted any declaration or affidavit from Representative Plaintiffs Jonathan Stanley and Mary Elliott attesting to their approval of the proposed Settlement Agreement. In addition, the Joint Motion for Approval is silent as to their approval. (ECF No. 127 at 15–16.) Nevertheless, the Undersigned notes that there is no evidence

---

[4] As a preliminary matter, both the Schwartz Declaration and the Schlein Declaration contain multiple errors in the paragraph numbering, making it difficult to cite to the appropriate paragraphs. (*See* ECF No. 121-4 (numbering paragraphs in the following order: 1, 2, 3, 4, 8, 9, 10, 10, 12); ECF No.131-2 (numbering paragraphs in the following order: 1, 2, 3, 4, 3, 4, 8, 9); *see also* ECF No. 130 (ordering counsel to file the Schlein Declaration).)

The present record does not persuade the Undersigned that Attorneys Matthew Schwartz and Samuel M. Schlein qualify as experts in employment or wage and hour actions and therefore does not cite to these declarations in support of this factor. The concerns related to Attorney Schwartz are discussed in more detail below, but the Undersigned notes here that his practice focuses on consumer rights and real estate. (Schwartz Declaration, ECF No. 121-4, ¶¶ 2–3.) The Undersigned cannot say that Attorney Schlein qualifies as an expert because he has been lead counsel in only ten employment discrimination cases and served as co-counsel in some employment actions. (Schlein Declaration, ECF No. 131-2 (averring, *inter alia*, that he has been co-counsel in twenty-five civil rights and employment cases, but not specifically identifying the number of employment cases).)

[5] The Undersigned directed Plaintiffs' counsel to submit a revised Forman Declaration because the one initially submitted to the Court was missing paragraphs and contained two paragraphs bearing the same number. (ECF No. 130.)

14

Representative Plaintiffs Jonathan Stanley or Mary Elliott object to the proposed Settlement Agreement.  Notably, Mr. Stanley appeared at the fairness hearing and did not testify as to anything, including any objection.  (ECF No. 129 at 2.)  While the better practice would be to submit a declaration or affidavit or provide testimony on the record documenting the Representative Plaintiffs' support for the settlement rather than relying on the absence of their objection, the Undersigned finds that this factor tilts slightly in favor of approval of the Settlement Agreement.

### 6.  The reaction of absent class members

The Court must also consider the reaction of the absent class members.  *Poplar Creek*, 636 F.3d at 244.  Here, 124 notices were delivered by either email or U.S. regular mail. (Defendant's Declaration, ¶¶ 2–6.)  Only fifteen individuals opted in to the settlement for the reasons previously discussed.  No objections were filed, however, and no class members appeared at the fairness hearing to object.  Under the circumstances of this particular case only, the Undersigned finds that this factor tips slightly in favor of approving the settlement.

### 7.  The public interest

"If the settlement reflects a reasonable compromise over issues actually disputed, such as FLSA coverage or computation of back wages, a court may approve a settlement to 'promote the policy of encouraging settlement of litigation.'"  *West v. Emeritus Corp.*, No. 3:15-cv-437, 2017 WL 2880394, at *2 (M.D. Tenn. July 5, 2017) (quoting *Crawford v. Lexington–Fayette Urban Cty. Gov't*, No. 06–299–JBC, 2008 WL 4724499, *9 (E.D. Ky. Oct. 23, 2008)); *see also In re Polyurethane Foam Antitrust Litig.*, 168 F. Supp. 3d 985, 997 (N.D. Ohio Jan. 27, 2016) ("Resolution of disputes through settlement rather than trial is normally in the public interest, as settlement serves to conserve scarce judicial resources.")  Here, the public has an interest in

ending "'potentially long and protracted litigation.'" *Castillo v. Morales, Inc*., No. 2:12-CV-650, 2015 WL 13021899, at *5 (S.D. Ohio Dec. 22, 2015) (quoting *Kritzer v. Safelite Sol., LLC*, No. 2:10-cv-0729, 2012 WL 1945144, at *8 (S.D. Ohio May 30, 2012)). Moreover, settlement of this kind of action provides relief for individuals who may not be able to bring these claims on their own. This factor therefore favors approval of the settlement.

In short, the Undersigned, having considered all of the relevant factors, finds that the proposed settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2).

## III.

### A.    Attorneys' Fees

The Settlement Agreement provides that Plaintiffs' counsel may seek reimbursement for attorneys' fees and costs from the common settlement fund "in an amount as calculated using the percentage amount set forth in Class Counsel's contract arrangement with" Representative Plaintiffs after it was proportionately reduced by opt-outs, *i.e.*, 30%. (Settlement Fund, Sections 5.7 and 5.8; *see also* ECF No. 121 at 3; ECF No. 129 at 8–9, 21–22.) As previously explained, the initial $500,000 settlement fund was proportionately reduced by the 55 individuals who opted out of the settlement. Plaintiffs' counsel represents that the proportionate reduction results in a new settlement fund in the amount of $165,122.24. (ECF No. 121 at 3; ECF No. 123; ECF No. 129 at 8–9, 13.) However, Plaintiffs' counsel provides no information about the amount of lost overtime for each of these opt-out individuals to explain how counsel determined the proportionate reduction to the settlement fund. (ECF No. 121 at 3; ECF No. 123.) Without these details, the Undersigned is unable to confirm that counsel's calculation of the proportionate reduction is correct and, therefore, in turn, cannot confirm that the requested amount in fees and

costs is appropriate. As specified below, counsel therefore must submit this information to the Court to support their request for fees.

However, relying on the representations of both Plaintiffs' and Turner's counsel (ECF No. 129 at 8–9) and assuming for purposes of this recommendation that counsel's calculation and proportionate reduction is correct, thirty percent of that new settlement fund is $49,536.67, which is the total amount of fees and costs sought by Plaintiffs' counsel. (ECF No. 123; ECF No. 129 at 9, 13.) After deducting the amount of costs ($431.37), Plaintiffs' counsel seeks a total amount of $49,105.30, in attorneys' fees. (*Id.*)

"The determination of a reasonable fee must be reached through an evaluation of a myriad of factors, all within the knowledge of the trial court, examined in light of the congressional policy underlying the substantive portions of the statute providing for the award of fees." *United Slate, Tile & Composition Roofer, Damp & Waterproof Workers Ass'n, Local 307 v. G & M Roofing and Sheet Metal Co*., 732 F.2d 495, 501 (6th Cir. 1984); *see also Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974) (identifying factors for the trial court's consideration when determining a reasonable fee). In evaluating whether the amount of the award is reasonable, this Court has considered the following factors:

> (1) the value of the benefit rendered for the class, (2) society's stake in rewarding attorneys who produce such benefits, (3) whether the services were undertaken on a contingent fee basis, (4) the value of the services on an hourly basis, (5) the complexity of the litigation, and (6) the professional skill and standing of the attorneys involved.

*Feiertag v. DDP Holdings, LLC*, No. 14–CV–2643, 2016 WL 4721208, at *6 (S.D. Ohio Sept. 9, 2016) (citation and internal quotation marks omitted); *see also Ramey*, 508 F.2d at 1196 (same).

In this case, the Settlement Agreement provides for an attorneys' fee award of $49,105.30. The Undersigned has reviewed Plaintiffs' counsel's unopposed motion[6] as well as the supporting documentation (ECF Nos. 121, 123, 125, 131) and is satisfied that the requested fee award in this case is fair and reasonable in light of the above factors above **on the condition that the additional information identified below is submitted to the Court**.

Turning to the first consideration, the value of the benefit rendered to the class weighs in favor of finding the fee request reasonable because, as previously discussed, the individuals who submitted a claim form will receive 100% of their lost overtime and, as discussed below, a significant *cy pres* fund has been created.

Society's stake in rewarding attorneys who produce such benefits also supports the reasonableness of the fee request where, but for the work of Plaintiffs' counsel in this case, the work of this class would go undervalued.

In addition, Plaintiff's counsel agreed to take this case on a contingency basis, assuming real risk with no guarantee of recovery, which weighs in favor of finding the fee request reasonable. *See Feiertag*, 2016 WL 4721208, at *7.

The Undersigned next considers the value of the services on an hourly basis. Plaintiffs' counsel and staff expended over 400 hours, resulting in fees in a total exceeding $130,000. (ECF No. 121 at 6–7; ECF No. 125; Marshall Declaration, ECF No. 121-1, ¶¶ 7–8; Jacobs Declaration, ECF No. 121-3, ¶¶ 8–10; Schwartz Declaration, ECF No. 121-4, ¶¶ 4, 8, 9, 10; Forman Declaration, ECF No. 131-1, ¶¶ 8–11; Schlein Declaration, ECF No. 131-2.) Plaintiffs' counsel provides no information or arguments related to the lodestar (*see generally* ECF No. 121), but

---

[6] Defense counsel stated at the fairness hearing that they do not oppose Plaintiffs' counsel's request for fees. (ECF No. 129 at 22.)

performing a cross-check of these fees using the lodestar is optional. *Feiertag*, 2016 WL 4721208, at *7.

The Undersigned, however, has some concerns with the value of the services as it relates to Attorney Schwartz, whose billing total amounts to a significant portion (approximately $31,000) of the total amount billed (approximately $131,000). (Schwartz Declaration, ECF No. 121-4, ¶¶ 8–10; ECF No. 125.) First, his declaration does not establish that he is an expert in employment cases generally, wage and hour litigation, or class actions. By his own admission, Attorney Schwartz operates "as a sole proprietor focusing on consumer rights and real estate." (Schwartz Declaration, ECF No. 121-4, ¶ 2; *see also id*. at ¶ 4 ("employment law and civil rights is not my primary focus").) While he avers that he has previously acted in "support" roles in employment discrimination cases and class actions, his declaration is vague as to the extent of that experience. (*Id*. at ¶ 3 ("I have acted in a support role in a number of employment discrimination cases filed in the federal and state courts. I have also worked in a support role on numerous class actions.").) Second, the record is ambiguous as to Attorney Schwartz's billable rate for time expended in this action and the justification for either of the rates identified. He avers that his "present hourly rate for work on employment and civil rights cases is $300.00 per hour[,]" which was "determined to be fair after discussions with co-counsel and my clients, and this rate is lower than rates I charge for matters which I have more experience." (*Id*. at ¶ 4.) However, Plaintiffs' counsel represents that Attorney Schwartz's hourly rate is $295. (ECF No. 121 at 6; ECF No. 125 at 1 (representing that Attorney Schwartz's time expended totals $30,975, which represents 105 hours of work billed at an hourly rate of $295).) Moreover, Attorney Schwartz's assertion that his hourly rate was determined based on discussions with other people constitutes hearsay. Regardless of the exact hourly rate and how it was determined, the

Undersigned cannot say that the present record establishes that Attorney Schwartz has provided the class with services worth a value in excess of $30,000.

Nevertheless, the record reflects that Attorneys Marshall, Jacobs, and Forman are extremely experienced in employment litigation and the Undersigned finds that their hourly rates are reasonable under the circumstances of this particular case. (Marshall Declaration, ECF No. 121-1, ¶¶ 7–8; Jacobs Declaration, ECF No. 121-3, ¶¶ 8–10; Forman Declaration, ECF No. 131-2, ¶¶ 7 –9.) Moreover, notwithstanding the deficiencies related to time expended by Attorney Schwartz, the fee requested as to this class action portion of the litigation (30% contingency fee) is comparable to fee awarded in settling the Section 216(b) part of this action. (ECF No. 44 (awarding $102,955); ECF No. 121 at 7 (explaining that $102,955 represents slightly less than 30% of the total amount obtained for the Section 216(b) opt-in class).) For these reasons, the Undersigned finds that the value of services tips in favor of finding the fee request reasonable.

Next, the complexity of the litigation militates in favor of granting the requested fee award. This is a complex FLSA and putative class action in which the parties disputed whether Turner's Landmen were entitled to overtime wages and properly treated as independent contractors. Turner has advanced defenses in this action that Plaintiffs instituted over two years ago and the Settlement Agreement represents a global settlement of all Rule 23 class claims. This factor weighs in favor of finding the fee request reasonable. *Feiertag*, 2016 WL 4721208, at *7.

Finally, with the exception of Attorneys Schwartz and Schlein who are not yet experts in the field, Plaintiffs' counsel are highly skilled in employment law and the hours expended and time records underscore their efficient handling of this matter, favoring approval. (ECF No. 125;

Marshall Declaration, ECF No. 121-1; Jacobs Declaration, ECF No. 121-3; Forman Declaration, ECF No. 131-1.)

For all of these reasons, the Undersigned concludes that these factors favor approval of the fee award of $49,105.30 to Plaintiffs' counsel, **on the condition** that counsel submits information about the amount of lost overtime for each of the 55 opt-out individuals sufficient to explain how counsel determined the proportionate reduction to the settlement fund. (ECF No. 121 at 3; ECF No. 123.)

### B. Out-of-Pocket Expenses and Administration Costs

The Settlement Agreement authorizes Plaintiffs' counsel to seek reimbursement of costs and expenses in this action. (Settlement Agreement, Section 2.0 (p. 14).) Plaintiffs' counsel has submitted documentation reflecting $862.73 in expenses. (ECF No. 125-8; Forman Declaration, ECF No. 131-1 ¶ 12.) However, Plaintiffs' counsel apparently seeks reimbursement for expenses in the amount of only $431.37, for this portion of the litigation. (ECF No. 121 at 2, 8.) These expenses include a transcript, photocopying, and postage. (ECF No. 125-8.) The Undersigned finds that these expenses were necessary to litigate and settle this action. *Cf. Feiertag*, 2016 WL 4721208, at *8.

### C. *Cy Pres* Fund

Finally, the Settlement Agreement provides that any excess funds remaining after the distribution be deposited in a *cy pres* fund to be mutually chosen by the Representative Plaintiffs and Turner. (Settlement Agreement at Section 4.7.) A *cy pres* fund in an amount in excess of $20,000 has been created. Plaintiffs, however, have provided conflicting information as to the total of that amount. (ECF No. 121 at 4–5 (Plaintiffs' counsel identifying in their request for fees that the amount in the *cy pres* fund totals $23,213.11); ECF No. 129 at 14 (Attorney

21

Foreman representing at the fairness hearing that the amount in the *cy pres* fund equals $20,051.22).)  Based on this record, the total amount in the *cy pres* fund is unclear and the parties have not identified what charity they have selected.  It may be that the discrepancy in the record is simply the result of calculation errors, but Plaintiffs' counsel do not explain this discrepancy. Although the Undersigned does not believe that this ambiguity is fatal to the approval of the Settlement Agreement, Plaintiffs' counsel should clarify the record on this issue, as directed below.

## IV.

For all of these reasons, the Undersigned finds that Plaintiffs have met their burden of showing that the prerequisites for the certification of a class action pursuant to Rule 23(a) and Rule 23(b)(3) have been satisfied in this case, that the Settlement Agreement is fair, reasonable, and adequate, and, **if certain conditions are met**, that Plaintiffs' counsel's requested award of fees and expenses is fair and reasonable.  Accordingly, it is **RECOMMENDED** that

(1)       because the proposed settlement of the action on the terms and conditions set forth in the Settlement Agreement is fair, reasonable, adequate, and in the best interest of the Class, that the Joint Motion for Approval (ECF No. 127) be **GRANTED** and that the Settlement Agreement be finally approved by the Court **only on the condition** that counsel submits the information identified in subparts (5)(a)–(c) below;

(2)       the Rule 23 class be finally certified for settlement purposes;

(3)       the action be dismissed with prejudice pursuant to the terms of the Settlement Agreement;

(4)       the Rule 23 settlement class, the Representative Plaintiffs, and Turner be bound by the release as set forth in the Settlement Agreement; and

(5)     Plaintiffs' counsel's Motion for Fees and Costs (ECF No. 121) be **GRANTED** and that Plaintiffs' counsel be awarded reasonable attorneys' fees in the amount of $49,105.30, and reimbursement of expenses in the amount of $431.37, for a total combined amount of $49,536.67, **only on the condition** that counsel file the following information with the Court within **SEVEN (7) DAYS** of this Report and Recommendation:

(a)     A breakdown of the calculation reflecting how counsel determined the proportionate reduction to the settlement fund, including details of the amount of lost overtime for each of the 55 class members who opted-out of the settlement;

(b)     A total list of anticipated payouts to the class members, as represented as forthcoming in ECF No. 127 at 6–7; and

(c)     Clarification of the dollar amount in the *cy pres* fund and the name of the charity, if one has been mutually selected by the parties.

## PROCEDURE ON OBJECTIONS

 If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Response to objections must be filed within fourteen (14) days after being served with a copy.  Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review of by the District Judge and waiver of the right to appeal the judgment of the District Court.  *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the

magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . ." (citation omitted)).

        **IT IS SO ORDERED.**


Date: June 12, 2018                        */s/ Elizabeth A. Preston Deavers*
                                       ELIZABETH A. PRESTON DEAVERS
                                       UNITED STATES MAGISTRATE JUDGE